**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

AHMED MOHAMED ARTAN,

        Defendant.

Case No. 22-cr-223(8) (NEB/DTS)

**MOTION FOR PRELIMINARY**
**ORDER OF FORFEITURE**

The United States of America, through Daniel N. Rosen, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, respectfully moves this Court for a Preliminary Order of Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2.

**BACKGROUND**

On September 13, 2022, a Grand Jury in the District of Minnesota returned an Indictment against Defendant Ahmed Mohamed Artan. ECF No. 1. The Forfeiture Allegations of the Indictment provided notice that the United States sought forfeiture of, among other things, any property, real or personal, constituting or derived from proceeds traceable to the commission of the wire fraud scheme, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *Id.*

On June 12, 2025, the United States and Artan entered into the Plea Agreement through which he agreed to plead guilty to Count 3 of the Indictment, which charged him with wire fraud in violation of 18 U.S.C. § 1343. ECF No. 670, ¶ 1. Artan admitted that from in or about October 2020 through in or about January 2022, he

knowingly participated in a scheme to defraud the Federal Child Nutrition Program ("FCNP"), a program designed to provide free meals to children in need. *Id.* ¶ 2.

In October 2020, Artan acquired a non-profit entity, Stigma-Free International, for use in carrying out the fraud scheme after the Minnesota Department of Education announced that it would no longer approve food sites run by for-profit entities. *Id.* Artan and his co-conspirators used Stigma-Free to open new FCNP sites around the State of Minnesota. Artan and his co-conspirators submitted fraudulent meal counts and false rosters in support of claims that Stigma-Free served meals to tens of thousands of children per day. Artan and his co-conspirators received millions of dollars in FCNP funds because of their fraud scheme. *Id.*

Artan and his co-conspirators created a company called Olive Management Inc. that purported to operate a FCNP site in St. Cloud, Minnesota. Artan and his co-conspirators falsely claimed that Olive Management served meals to 3,000 children a day, seven days a week, at a small storefront deli located in a strip mall. Artan and his co-conspirators submitted fraudulent meal counts and false rosters in support of claims that between September 2020 and September 2021, Olive Management served more than 1.6 million meals at the Olive Management Inc. site. *Id.*

Artan and his co-conspirators also created a company called Optimum Community Services for use in carrying out the fraud scheme. They claimed that Optimum had food distribution sites in Golden Valley and Waite Park at which they served nearly 700,000 meals to children between March and December 2021. Based

on these fraudulent claims, Artan and his co-conspirators caused a loss of $1,682,664 in FCNP funds. *Id.*

Artan and his co-conspirators transferred more than $1 million in FCNP funds to another shell company called Five A's Projects LLC to purchase a bar and restaurant in Brooklyn Park, Minnesota. *Id.* Artan agreed to forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, including the real property located at 8432 Noble Avenue, Brooklyn Park, Minnesota, known previously as Kelly's 19th Hole[1] ("the Property"). *Id.* ¶ 14.

Artan also consented to a money judgment forfeiture in an amount not to exceed $666,422 and not less than $250,000 and admitted that range represents the amount of proceeds he obtained from the wire fraud scheme alleged in Count 3 of the Indictment. *Id*. ¶ 14.

## ARGUMENT

**I.    A PRELIMINARY ORDER OF FORFEITURE SHOULD BE ENTERED FOR DIRECTLY FORFEITABLE ASSETS.**

**A. Legal Standard**

Rule 32.2(b) of the Federal Rules of Criminal Procedure provides that:

(b) Entering a Preliminary Order of Forfeiture.

(1) Forfeiture Phase of the Trial.

---

[1] This property was sold, pursuant to a Stipulation for Interlocutory Sale (ECF Nos. 785, 792), on or about April 13, 2026. As a result, the net proceeds of that interlocutory sale are subject to forfeiture in lieu of the property itself.

(A) Forfeiture Determinations. As soon as practical . . . after a plea of guilty . . . court must determine what property is subject to forfeiture. . . If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.. . .

(B) Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

(2) Preliminary Order.

(A) Contents of a Specific Order. If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . The court must enter the order without regard to any third party's interest in the property.

Criminal forfeiture is a part of sentencing; it is not a substantive element of the offense. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). As such, the preponderance of the evidence standard of proof applies. *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006); *see also, e.g., United States v. Peithman,* 917 F.3d 635, 651 (8th Cir. 2019).

Because the governing statutes include compulsory terms, forfeiture is mandatory. *United States v. Williams,* 720 F.3d 674, 702 (8th Cir. 2013) (differentiating "shall" from "may" in forfeiture statutes). The plain language of 28 U.S.C. § 2461(c) mandates forfeiture when a defendant is convicted of an offense giving rise to forfeiture. *Id.* ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. . .") (emphasis added); *see also United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("The word 'shall' does not convey discretion").

Moreover, "Forfeiture is mandatory even when restitution is also imposed." *Id.*; *see also United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) (defendant, pursuant to 18 U.S.C. § 982(a)(2), is "not entitled to a credit for the amount that he had repaid toward the fraudulently obtained loan."); *United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013) ("Restitution is loss based, while forfeiture is gain based.") (citations omitted.) Although forfeiture and restitution are separate aspects of a criminal sentence, forfeited assets are often used to compensate criminal victims through the remissions process authorized by 28 C.F.R. Part 9.

Third-party claims to forfeitable property are addressed in an ancillary proceeding and are not at issue at this stage of the forfeiture process. *See* 21 U.S.C. § 853(n) (as incorporated by 28 U.S.C. § 2461(c)); Fed. R. Crim. P. 32.2(c). Accordingly, the Court enters the preliminary order of forfeiture without consideration of third-party interests in the property. *See id*. Determining any such interests "must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Fed. R. Crim. P. 32.2(b)(2)(A).

## B. Forfeiture is Authorized for Proceeds of a Wire Fraud Scheme.

Defendant has pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343. As a consequence, 18 U.S.C. § 981(a)(1)(C) mandates forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense

constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."[2]

Proceeds of a wire fraud scheme include all gross receipts of the scheme. *See, e.g., United States v. Simmons,* 154 F.3d 765, 770-772 (8th Cir. 1998) (interpreting similar forfeiture authority for RICO violation, holding, "the better view is the one that defines proceeds as the gross receipts of the illegal activities); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir. 2005) (defendant was not entitled to offset expenses, "even if the expenses were legitimately incurred by Huber, they would not reduce the amount subject to forfeiture"); *United States v. Hively.* 437 F.3d 752, 763 (8th Cir. 2006) (same); *United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016) (all funds from defendant's fraud scheme were subject to forfeiture on conviction for mail and wire fraud, rather than only the amounts specified in counts of conviction).

**C. Directly Forfeitable Property is Subject to Forfeiture From Artan.**

Artan agreed in his Plea Agreement that the Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because it constitutes or was derived from proceeds traceable to the wire fraud scheme for which he has pleaded

---

[2] Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense listed in section 1961(1). The offenses listed in section 1961(1) include wire fraud. Although 18 U.S.C. § 981(a)(1)(C) is a civil forfeiture provision, 28 U.S.C. § 2461(c) authorizes criminal forfeiture when a defendant is convicted of an offense for which civil forfeiture is authorized, as it has done here. *See, e.g.*, *United States v. Jennings*, 487 F.3d 564, 583-584 (8th Cir. 2007) (affirming money judgment forfeiture based on mail fraud conviction pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. § 2461(c)); *Adetiloye*, 716 F.3d at 1041.

guilty. As noted above, it was sold pursuant to a Stipulation for Interlocutory Sale, so the net proceeds of that sale will be forfeited in lieu of the Property.

## II.    MONEY JUDGMENT FORFEITURE OF $666,422 SHOULD BE ENTERED.

Entry of a personal money judgment forfeiture is specifically authorized by Fed. R. Civ. P. 32.2(b)(1), and such orders have been repeatedly upheld. *See, e.g., United States v. Johnson*, 956 F.3d 510, 518 n.5 (8th Cir. 2020) (affirming $2.1 million money judgment forfeiture, with defendant receiving credit against that total for the value of forfeited assets); *Peithman*, 917 F.3d at 652 (affirming money judgment forfeiture imposed under 18 U.S.C. § 981(a)(1)(C), while remanding for a redetermination of the amount of the money judgment issued under 21 U.S.C. § 853), cert. denied, 140 S. Ct. 340 (2019); *United States v. Gregoire,* 638 F.3d 962, 971-72 (8th Cir. 2011) (money judgment forfeiture permitted based on mail fraud conviction); *Jennings*, 487 F.3d at 586 (affirming money judgment for "honest services" mail fraud scheme).

Artan has admitted through his plea agreement that he "knowingly participated in a scheme to defraud the [FCNP]." ECF No. 670, ¶ 2. Artan consented to a money judgment forfeiture "in an amount not to exceed $666,422 and not less than $250,000 which represents the amount of proceeds he obtained from the wire fraud scheme alleged in the Indictment." *Id*. ¶ 14. In support of this Motion, the United States submits the Declaration of Forensic Accountant Pauline Roase ("Roase Declaration"), which includes a series of spreadsheets detailing the amount of fraud proceeds Artan obtained and the basis for that sum.

7

As Exhibits A-E show, Artan obtained at least $666,422 through the fraud scheme, so a money judgment forfeiture in that amount is appropriate. Roase Declaration ¶ 5. This sum includes the following categories of proceeds Artan obtained: (1) $69,612.38 from Stigma-Free International Inc.; (2) $437,628.97 from Optimum Community Services; (3) $66,360.02 from Gophers Logistics Inc.; and (4) $92,821.54 of deposits into Artan's personal accounts. The basis for each of these categories of proceeds is set forth in detail in the Roase Declaration. These sums are consistent with evidence showing Artan funneled fraud proceeds through various entities and co-conspirators and he used fraud proceeds to buy property for himself.

Despite the large total, the sums above are a relatively conservative estimate of the fraud proceeds that Artan obtained through the food program fraud scheme. For example, this calculation subtracts payments to co-conspirators from the total, and it includes only half of the sum of net fraud proceeds deposited into accounts held by entities Artan co-owned with Abdi Salah (whose money judgment forfeiture included the other half of those funds). Artan will receive a credit against the money judgment forfeiture for the net value of each asset that is forfeited from him in connection with this case. *See Johnson,* 956 F.3d at 518 n.5

## III. A GENERAL ORDER OF FORFEITURE SHOULD BE ENTERED AGAINST ARTAN.

The United States requests that a general order of forfeiture be entered against Artan pursuant to Fed. R. Crim. P. 32.2(b)(2)(C). A general order of forfeiture, which

is expressly authorized by the Federal Rules of Criminal Procedure, allows the United States to seek the forfeiture of directly forfeitable property identified after sentencing:

> **(C) General Order.** If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the amount of the money judgment, the court may enter a forfeiture order that:
>
> > (i)    lists any identified property;
> >
> > (ii)    describes other property in general terms;
> >
> > (iii)    states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Fed. R. Crim. P. 32.2(b)(2)(C).

The government requests that the preliminary order of forfeiture include a general order of forfeiture as provided for in Fed. R. Crim. P. 32.2(b)(2)(C). Entry of a general order of forfeiture will allow the government to pursue directly forfeitable assets if any are identified after sentencing. Preserving the government's right to seek the direct forfeiture of assets based on evidence that such assets are traceable to the fraud scheme would allow the government to clear title to such assets and seek to recover proceeds that have been transferred to third parties. *See* 21 U.S.C. § 853(c) (codifying the relation-back doctrine). A general order of forfeiture will provide an important tool in addition to the money judgment forfeiture requested above.

## IV.    THE GOVERNMENT IS ENTITLED TO DISCOVERY TO LOCATE ASSETS SUBJECT TO FORFEITURE.

The United States also requests entry of an order pursuant to Fed. R. Crim. P. 32.2(b)(3) authorizing it to conduct discovery for the purpose of identifying and

locating additional assets subject to forfeiture constituting or derived from proceeds Artan obtained directly or indirectly from the wire fraud scheme, or assets of Artan that may be substituted up to the value of the money judgment forfeiture. Rule 32.2(b)(3) authorizes the government, upon the entry of a preliminary order of forfeiture, to "conduct any discovery the court considers proper in identifying, locating, or disposing of the property" that has been forfeited to the United States. Such discovery may include the taking of depositions of witnesses. *See* 21 U.S.C. § 853(m); *United States v. Saccoccia*, 898 F. Supp. 53 (D.R.I. 1995) (government can take depositions for the purpose of locating assets controlled by the defendant that are subject to forfeiture). In addition, the reference in Rule 32.2(b)(3) to "any discovery the court considers proper" necessarily permits the court to authorize discovery under the Federal Rules of Civil Procedure. Such discovery includes but is not limited to the authority to issue a request for documents to a party under Rule 34 and to a non-party under Rules 34(c) and 45.

The United States also requests that the Court retain jurisdiction over this action pursuant to Rule 32.2(e) to forfeit any subsequently discovered directly forfeitable or substitute property, and to dispose of any third-party claims to such assets.

//

10

## CONCLUSION

For the foregoing reasons, the United States respectfully moves this Court for a

Preliminary Order of Forfeiture.

Respectfully submitted,

Dated: July 16, 2026

DANIEL N. ROSEN
United States Attorney

*s/Craig R. Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov