UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(8) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **REGARDING SENTENCING** |
| | ) | |
| AHMED MOHAMED ARTAN, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 41 months in prison.

Defendant Ahmed Mohamed Artan, along with his co-conspirators, operated a non-profit Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, called Stigma-Free International. In October 2020, shortly after the Minnesota Department of Education announced that it was no longer approving food sites run by restaurants and other for-profit companies, defendant Artan acquired Stigma-Free International, for use in carrying out the scheme. Artan and his co-conspirators used Stigma-Free International to open a number of new Federal Child Nutrition Program sites around the state of Minnesota, including in Willmar, Mankato, St. Cloud, Waite Park, and St. Paul. At the same time, other conspirators created additional shell companies to serve as meal vendor companies purporting to

provide the meals to be served to children at these Stigma-Free International sites. Together, the defendant and his co-conspirators claimed to be serving meals to tens of thousands of children each day throughout the state of Minnesota, for which they fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

Over the 12-month period from November 2020 to November 2021, defendant Artan and his co-conspirators fraudulently claimed to have served nearly 5 million meals to children at the Stigma-Free International sites. In support of these claims, they prepared and submitted fraudulent meal count sheets and invoices. The conspirators also submitted fake attendance rosters purporting to list the names of children who received food at the Stigma-Free International sites. The rosters were fraudulent and the names on them fake.

Artan and his co-conspirators created a company called Olive Management Inc. that purported to operate a federal child nutrition program site in St. Cloud, Minnesota. The Olive Management site fraudulently claimed to have served meals to 3,000 children a day, seven days a week, at a small storefront deli located in a strip mall in St. Cloud. During the 12-month period from September 2020 to September 2021, the defendant and his co-conspirators fraudulently claimed to have served more than 1.6 million meals to children at the Olive Management site. In support of these claims, the defendants prepared and submitted fraudulent meal count sheets and invoices. In support of their fraudulent claims, the defendants also submitted a fake attendance roster purporting to list the names of 2,040 children who attended the

2

Olive Management site's "after-school program." The roster was fraudulent and the names on it were fake.

Artan and his co-conspirators also created another company called Optimum Community Services for use in carrying out the fraud scheme. Optimum Community Services purported to have food distribution sites in Golden Valley and Waite Park, at which they claimed—fraudulently—to have served nearly 700,000 meals to children between March and December 2021. Based on these fraudulent claims for Optimum Community Services, the defendant and his co-conspirators caused a loss of approximately $1.6 million in Federal Child Nutrition Program funds.

Rather than use fraudulently obtained money to serve meals or feed children, the defendant and other co-conspirators created a shell company called Five A's Projects LLC to receive and launder the proceeds of the fraud scheme. The defendant and other co-conspirators together transferred more than $1 million in Federal Child Nutrition Program funds to Five A's Projects LLC. On October 22, 2021, the defendants used these funds to purchase the former location of Kelly's 19th Hole, a bar and restaurant in Brooklyn Park, Minnesota, for approximately $1 million, of which defendant Artan contributed approximately $60,000.

Artan was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 3, 6, 7, 9, 10, and 13), conspiracy to commit federal programs bribery (Count 15), conspiracy to commit money laundering (Count 41), and money laundering (Count 58). Artan pleaded guilty to wire fraud (Count 3) on June 12, 2025.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id*. at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id*. at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.    Sentencing Guidelines Range

The government agrees with the Guidelines calculations contemplated in the PSR.  The base offense level for Count 13 is 7.  PSR ¶ 102.  The offense level is increased by 16 levels because the loss was between $1.5 million and $3.5 million. PSR ¶ 103.  The offense level is increased by 2 levels because the defendant operated a food site through a non-profit entity and misrepresented that he was acting on behalf of a charitable or educational organization. PSR ¶ 104.  The offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 105. Finally, the defendant's offense level is decreased by 2 levels because he was a minor participant in any criminal activity.

PSR ¶ 107. The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 110-110. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). PSR ¶ 112. The defendant falls into Criminal History Category I.

With a total adjusted offense level of 20, and Criminal History Category I, the defendant's advisory Guidelines range is 33-41 months in prison. PSR ¶ 173. With a total adjusted offense level of 20, and Criminal History Category I, the defendant's Guidelines fine range is $15,000 to $150,000. PSR ¶ 184.

## B.    Section 3553(a) Sentencing Factors

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### 1.    Nature and Circumstances of the Offense

Artan participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to the money and that it was obtained by lying to the government about the number of

children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

### 2.      History and Characteristics of the Defendant

Artan was born in Somalia in 1984 and spent much of his childhood in refugee camps, where he experienced relative stability.  He came to Minnesota at age 22 and has resided in the state ever since.  He has completed a college degree. He has three young children with his previous and current (albeit estranged) wives. Aside from a two year period of unemployment between 2021 and 2023, the PSR reflects that the defendant has been regularly employed since at least 2015.

### 3.      Deterrence, Respect for the Law, Just Punishment, and Protecting the Public

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Artan's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Artan included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Artan's conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

### 4.    The Need to Avoid Unwanted Disparities

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 94 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Artan, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 26 months. The amount of money Artan received through fraud laundered falls on the lower end of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Artan's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

### CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 41 months in prison.

Respectfully Submitted,

Dated: August 10, 2026

DANIEL N. ROSEN
United States Attorney

 /s/ *Rebecca E. Kline*
BY:   REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys

7